JUDGE BERMAN

11 CIV 4492

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ENVIRONMENTAL DEFENSE FUND, )
)
)
Plaintiff, )
)
v. )
)
LISA P. JACKSON, Administrator, United )
States Environmental Protection Agency, in )
her official capacity, )
)
Defendant. )
)

Civil Action No.

ECF Case

COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF

RECEIVED
JUN 30 2011
U.S.D.C. S.D. N.Y.
CASHIERS

## INTRODUCTION

Plaintiff Environmental Defense Fund ("EDF") brings this action pursuant to the Clean

Air Act, 42 U.S.C. §§ 7411, 7604(a), to compel Defendant Lisa P. Jackson, Administrator of the

United States Environmental Protection Agency ("EPA"), to perform nondiscretionary duties

regarding municipal solid waste ("MSW") landfills and the new source performance standards

for this source category. See 40 C.F.R. Part 60, Subpart WWW. Section 111(b)(1)(B) of the

Clean Air Act ("CAA" or "the Act") requires EPA "at least every 8 years" to "review and, if

appropriate, revise [the new source performance] standards." 42 U.S.C. § 7411(b)(1)(B). Final

EPA action to fulfill the section 111(b)(1)(B) requirements for MSW landfills became due "at

least" as of March 12, 2004, which was eight years after EPA promulgated the standards. Yet

EPA did not fulfill its nondiscretionary duty to take each required final action under section

111(b)(1)(B) by that time and has continued to fail to do so each day since. EDF therefore seeks

declaratory relief in the form of a judicial determination that the Administrator's failure to

perform each action required by section 111(b)(1)(B) violates the Clean Air Act. EDF also

1

requests an order to compel the Administrator to perform each action required by section 111(b)(1)(B) in accordance with a deadline set by this Court.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to section 304(a) of the CAA, 42 U.S.C. § 7604(a), and 28 U.S.C. §§ 1331 and 1361.  Plaintiff has a right to bring this action pursuant to section 304(a) of the CAA, 42 U.S.C. § 7604(a), and 28 U.S.C. § 1361.  This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant injunctive and further relief pursuant to section 304(a) of the CAA, 42 U.S.C. § 7604(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1361.

2.     By certified letter to the Administrator posted on October 23, 2008, Plaintiff served notice of this action as required by section 304(b) of the CAA, 42 U.S.C. § 7604(b), and 40 C.F.R. Part 54.  Since sending this letter, Plaintiff EDF has engaged in discussions with EPA about the claims raised here.

3.     Venue is vested in this Court under 42 U.S.C. § 7604(a) and under 28 U.S.C. § 1391(e) because Plaintiff EDF is headquartered and resides in New York County at 257 Park Avenue South, New York, NY 10010.

## PARTIES

4.     Defendant Lisa P. Jackson is the Administrator of the U.S. Environmental Protection Agency, and in that role is charged with the duty to fulfill each of the responsibilities delegated to her, to fulfill the objectives of the Clean Air Act, and to take all regulatory actions required therein.  She is sued in her official capacity.

5.     Plaintiff EDF is a nonprofit corporation organized and existing under the laws of the State of New York, with its headquarters located in New York, NY, and with additional

2

offices around the country. EDF brings this action on behalf of itself and its adversely affected members. EDF is a national membership organization with over 300,000 members residing throughout the United States. EDF is dedicated to carrying out the interests of its members in protecting and enhancing the quality of the human and natural environment by, among other things, advocating the deployment of effective pollution control technologies, the design of national policies to reduce air pollution, and the use of adequate information and rigorous science in governmental decisions affecting the environment, and promoting the availability of sound public information regarding the state of human health and the environment, including the impacts and extent of air pollution.

## LEGAL BACKGROUND

6.      A central purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Act also has a primary goal "to encourage or otherwise promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention." *Id.* § 7401(c).

7.      To further these objectives, the Administrator of EPA must publish a list of each category of stationary source that "causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Id.* § 7411(b)(1)(A); *see also id.* § 7411(a)(3) (defining "stationary source").

8.      Once the Administrator has listed such a source category, the Administrator must promulgate federal standards of performance to regulate emissions from new, modified, and reconstructed sources in that category. *Id.* § 7411(b)(1)(B); *see also id.* § 7411(a)(2) (defining "new source"); *id.* § 7411(a)(4) (defining "modification"); 40 C.F.R. § 60.15(b) (defining

3

"reconstruction"). Each such standard is known as a "new source performance standard" or "NSPS." By definition, an NSPS is

> a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated.

42 U.S.C. § 7411(a)(1). This requirement is known as "Best Demonstrated Technology" ("BDT").

9.      Section 111(b)(1)(B) of the CAA explicitly requires that EPA complete a timely review and revision of the NSPS, mandating that "[t]he Administrator shall, at least every 8 years, review and, if appropriate, revise such standards following the procedure required by this subsection for promulgation of such standards." *Id.* § 7411(b)(1)(B).

10.     This provision further mandates that the eight-year review is required for such a standard unless "the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard." *Id.*

11.     Similarly, the Administrator must revise the NSPS "at least every 8 years" unless she promulgates a determination that such a revision is not "appropriate" under the Clean Air Act. *Id.*

12.     To satisfy this duty, the Administrator must "follow[] the procedure required by this subsection for promulgation of such standards." *Id.* This procedure includes a rulemaking with public notice to "afford interested persons an opportunity for written comment." *Id.* Further, the Act also requires a specific rulemaking procedure for "the promulgation or revision of any standard of performance under section 7411 of this title." 42 U.S.C. § 7607(d)(1)(C); *see id.* § 7607(d)(2)-(10).

13.     As part of the requisite revision of, or the determination not to revise, any such standard, the Administrator must address whether "implementation and enforcement of any requirement of this chapter indicate that emission limitations and percent reductions beyond those required by the standards promulgated under this section are achieved in practice." 42 U.S.C. § 7411(b)(1)(B). If this is true, then the Administrator must "consider the emission limitations and percent reductions achieved in practice" when revising such a standard. *Id.*

14.     For existing sources, section 111(d) of the Clean Air Act, 42 U.S.C. § 7411(d), requires that the Administrator ensure the promulgation of standards, based on the NSPS, carried out by the States and EPA, similar to the plans administered under 42 U.S.C. § 7410. *Id.* § 7411(d). The procedure that EPA has promulgated for this purpose starts with the required promulgation of federal "emission guidelines" ("EG") for existing sources. *See* 40 C.F.R. §§ 60.21(e), 60.22; *see also id.* §§ 60.20-60.29 (describing overall procedure for existing sources as provided for in 42 U.S.C. § 7411(d)(1)).

15.     Specifically, the CAA section 111(d) procedure mandates that:

> *Concurrently upon or after* proposal of standards of performance for the control of a designated pollutant from affected facilities, the Administrator *will publish* a draft guideline document containing information pertinent to control of the designated pollutant form [*sic*] designated facilities. . . . After consideration of public comments and *upon or after* promulgation of standards of performance for control of a designated pollutant from affected facilities, a final guideline document *will be published* and notice of its availability *will be published* in the Federal Register.

40 C.F.R. § 60.22(a) (emphasis added). These required emission guidelines for existing sources, like NSPS, must reflect BDT. *See id.* §§ 60.22(b)(5), 60.21(e); *see also* 42 U.S.C. § 7411(d)(1) (also providing for consideration of "the remaining useful life of the existing source to which such standard applies").

16.     After EPA establishes these required emission guidelines for existing sources

under 40 C.F.R. § 60.22, each State must implement and enforce EPA's guidelines, by

submitting a plan that includes standards to control emissions from these sources that are "no

less stringent" than the federal emission guidelines.  40 C.F.R. §§ 60.23(a), 60.24(c); *see also id.*

§ 60.27.

## FACTUAL BACKGROUND

17.     In 1996, EPA made the determination that MSW landfills "cause[], or contribute[]

significantly to, air pollution which may reasonably be anticipated to endanger public health or

welfare," 42 U.S.C. § 7411(b)(1)(A).  *See* Final Rule, Standards of Performance for New

Stationary Sources and Guidelines for Control of Existing Sources: Municipal Solid Waste

Landfills, 61 Fed. Reg. 9905, 9905 (Mar. 12, 1996) (originally proposed at 56 Fed. Reg. 24,468

(May 30, 1991)).  EPA then added MSW landfills to its priority list of source categories.  *Id.*

The source category of MSW landfills remains on the priority list.  *See* 40 C.F.R. § 60.16.

18.     Simultaneously, EPA promulgated standards of performance for new, modified,

and reconstructed MSW landfills pursuant to CAA section 111(b)(1)(B), 42 U.S.C. §

7411(b)(1)(B), and promulgated emission guidelines for existing landfills pursuant to CAA

section 111(d), 42 U.S.C. § 7411(d).  61 Fed. Reg. at 9919-29 (promulgated at 40 C.F.R. Part 60,

Subpart WWW (40 C.F.R. §§ 60.750 – 60.759) (NSPS), and Subpart Cc (40 C.F.R. §§ 60.30c –

60.36c) (EG)).

19.     In taking these actions, EPA found that MSW landfill emissions cause harm to

human health and the environment.  *Id.* at 9905, 9912; 40 C.F.R. § 60.751 (defining "MSW

landfill emissions" as "gas generated by the decomposition of organic waste deposited in an

MSW landfill or derived from the evolution of organic compounds in the waste").  For example:

> The emissions of concern are non-methane organic compounds (NMOC) and methane. NMOC include volatile organic compounds (VOC), hazardous air pollutants (HAPs), and odorous compounds. VOC emissions contribute to ozone formation which can result in adverse effects to human health and vegetation. Ozone can penetrate into different regions of the respiratory tract and be absorbed through the respiratory system. The health effects of exposure to HAPs can include cancer, respiratory irritation, and damage to the nervous system. Methane emissions contribute to global climate change and can result in fires or explosions when they accumulate in structures on or off the landfill site.

61 Fed. Reg. at 9905; *see also* 56 Fed. Reg. at 24,473.

20.     As EPA has explained, ozone, in particular, causes numerous human health and welfare problems. For example:

> Ozone leads to alterations in pulmonary function, aggravation of pre-existing respiratory disease, damage to lung structure, and adverse effects on blood enzymes, the central nervous system, and endocrine systems. Ozone also warrants control due to its welfare effects, specifically, reduced plant growth, decreased crop yield, necrosis of plant tissue, and deterioration of certain synthetic materials such as rubber.

61 Fed. Reg. at 9917.

21.     The NSPS and emission guidelines that EPA promulgated require the reduction of MSW landfill emissions from large MSW landfills by a gas collection system and a control device. Under these rules, the BDT control device is a type of combustion device (e.g., a flare). *Id.* at 9907; 40 C.F.R. § 60.752(b) (NSPS threshold); *id.* § 60.33c(a)(2) (same threshold for EG).

22.     There are currently about 559 MSW landfills covered by the emission guidelines. *See* Notice; Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills (Renewal), 75 Fed. Reg. 144, 145 (Jan. 4, 2010).

23.     The NSPS currently controls about 36 percent of landfill gas emissions from MSW landfills. *See* Office of Air & Radiation, U.S. EPA, Technical Support Document for the

Landfill Sector: Proposed Rule for Mandatory Reporting of Greenhouse Gases 8 (2009) (stating

that requiring reporting from NSPS-covered landfills would cover 36 percent of emissions).

24.     Since 1996, EPA has documented the broader use and availability of various

control technologies at MSW landfills. *See, e.g.*, U.S. EPA, LFG Energy Project Development

Handbook 1-4 to 1-8 (2010), www.epa.gov/lmop/documents/pdfs/pdh_chapter1.pdf.

## SPECIFIC ALLEGATIONS

25.     EPA is required to review the MSW Landfills NSPS or determine that such

review is not "appropriate in light of readily available information on the efficacy of such

standard," while fulfilling all related statutory and regulatory requirements.  42 U.S.C. §

7411(b)(1)(B).

26.     EPA is required to revise the MSW Landfills NSPS, or determine that such a

revision is not "appropriate," while fulfilling all statutory and regulatory requirements.  *Id.*

27.     The statute directs EPA to take these required actions "at least every 8 years," *i.e.*,

first by the date of March 12, 2004, and then at least every eight years thereafter.  *Id.*

28.     EPA has neither completed the review of the MSW Landfills NSPS nor

promulgated a determination that such a review is not "appropriate in light of readily available

information on the efficacy of such standard," as required by CAA section 111(b)(1)(B), 42

U.S.C. § 7411(b)(1)(B), "at least every 8 years."

29.     EPA also has neither finalized a revision of the MSW Landfills NSPS nor

promulgated a determination that such a revision is not "appropriate," as required by CAA

section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), "at least every 8 years."

30.     Therefore, EPA has not satisfied its legal duty under section 111(b)(1)(B) of the Clean Air Act to review and revise the MSW Landfills NSPS, or to issue the required determinations that such review and revision are not "appropriate," 42 U.S.C. § 7411(b)(1)(B).

31.     EPA also has not completed a review or revision of the MSW Landfills Emission Guidelines, 40 C.F.R. Part 60, Subpart Cc, which is required by section 111(d), 42 U.S.C. § 7411(d), to be done "concurrently upon or after" revision of the MSW Landfills NSPS, 40 C.F.R. § 60.22(a).

32.     EPA has acknowledged that it has not initiated the eight-year review required by CAA section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B).

33.     The Administrator's failure to review and revise the MSW Landfills NSPS for new, modified, and reconstructed sources "at least every 8 years," as appropriate, and the resulting failure to revise the emission guidelines for existing sources, has likely resulted in outdated standards that do not reflect BDT for new, modified, reconstructed, and existing sources.

## ALLEGATIONS DESCRIBING PLAINTIFF'S INJURIES

34.     EDF and its members have been and will continued to be harmed by the Administrator's failures to take actions required by CAA section 111 for MSW landfills, as described in the above paragraphs.

35.     EDF's activities include public education, advocacy, and litigation to enforce and strengthen environmental laws and to prevent, reduce, and mitigate air pollution and its adverse effects.  As part of and to achieve EDF's mission, it analyzes and provides its members and the public with information regarding the adverse impacts of air pollution, the potential for robust pollution control technologies, and a variety of other solutions to evaluate, influence, and

implement well-designed policies and governmental actions. EDF actively engages in education and outreach activities by communicating with its members and with the public through its website, email communications, reports and analyses, press statements, Internet-based media outlets, and other publications, and utilizes information on pollution control technologies in those communications. In addition, EDF seeks strategic partnerships with corporations to encourage and support their efforts to conduct business in a manner that reduces air pollution and mitigates its impact on human health and the environment.

36.     EDF has members who reside, work, travel, and recreate in areas of the United States where MSW landfills emit air pollution and in areas that are affected by air pollution emitted by these landfills. EDF also has members who have a reasonable basis for concern that new landfills or the modification or reconstruction of existing landfills will harm their ability to continue to enjoy these interests and to engage in these activities.

37.     As a result of their activities in areas affected by MSW landfill emissions, EDF's members are adversely impacted by those emissions, and they have an interest in reducing the emission of pollutants from MSW landfills. Those members who own property near new or potential expansions of existing MSW landfills experience a risk of harm due to the increase of pollutants. EDF members also enjoy natural resources that are adversely impacted by MSW landfill air pollution and that EDF's members have an interest in protecting from this type of pollution. In the course of these activities and exposures, EDF's members have experienced and continue to experience or are likely to experience harm to their health, environmental, recreational, aesthetic, and economic interests due to the Administrator's ongoing failure to take the action required by section 111(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(B), for MSW landfills.

38.     The Administrator's failure to review and revise the standards for the control of

air pollution from MSW landfills under CAA section 111 injures EDF and its members, first, by

depriving them of the benefits that would result from such revisions.  Such benefits would

include reductions in harmful levels of air pollutants and air pollution, improvements in their

aesthetic, recreational, and economic interests caused by such reductions, and public health and

welfare improvements.

39.     Further, whatever type of substantive action is taken by the Administrator, the

Administrator's failure to act as required by CAA section 111 has deprived and continues to

deprive EDF and its members of information (including data, findings, and determinations

regarding MSW landfills and pollution control technologies) to which they would have access if

EPA took the required regulatory actions.  For example, in order to satisfy the requirements of

section 111(b)(1)(B), EPA would be required to review and address the best demonstrated

control technology available to reduce air pollution from MSW landfills.  As part of any

revision, EPA would be required to address "the emission limitations and percent reductions

achieved in practice." 42 U.S.C. § 7411(b)(1)(B).  At minimum, EPA would be required to issue

a determination, including its basis for such a determination, that it is not "appropriate" to revise

the standards or not "appropriate in light of readily available information" to review the

standards. *Id.*

40.     During the rulemaking that is required to fulfill these duties, *id.* § 7607(d)(1),

EPA is required to make the docket publicly available, to provide public access to all factual

data, methodology, analysis, legal interpretations, and policy considerations collected during the

review or considered as part of the proposed and final action, and to issue a public response to all

11

significant comments, criticisms, and new data submitted during the comment period. *Id.* §
7607(d)(2)-(6).

41.     The Clean Air Act also grants the public an independent right to all records,
reports, and information collected by EPA. *See id.* § 7414(c) (providing limited exceptions).

42.     EDF and its members are currently deprived of each of these types of information
that they have an interest in using to carry out EDF's mission and its members' own personal
activities. If EDF and its members obtain access to such information, determination, and any
underlying data collected or considered by EPA during the course of the overdue rulemaking,
they intend to use this information, scientific data, and determination in a number of ways. For
example, they intend to use it to educate the public about available control technologies to reduce
emissions of air pollutants from MSW landfills, to understand and advocate adoption of
appropriate measures by facilities or local governments to limit such emissions in their local
area, to advocate and negotiate more sustainable business practices by facilities and companies
within these sectors and help them compare their emissions levels with other facilities, to engage
in activities locally, including education and enforcement efforts, to ensure that nearby MSW
landfills fulfill applicable requirements, to change their own consumption habits and landfill
waste contributions, or otherwise to take material action to protect their health, environmental,
recreational, aesthetic, and economic interests and to advance EDF's mission. Absent EPA's
collection and distribution of these types of information, EDF has a need to expend staff
resources to perform research on MSW landfills in order to serve its organizational mission to
educate the public and its members regarding this significant source of air pollution. By
depriving EDF and its members of such information, the Administrator's failure to review and
revise the standards that are at issue in this case injures EDF and its members.

12

43.    Finally, whatever type of substantive action is taken by the Administrator, the

Administrator's failure to act also has deprived and continues to deprive EDF and its members of

fundamental procedural rights established by the Clean Air Act to protect threatened interests of

EDF and its members. As discussed above, the Clean Air Act has a primary purpose to protect

human health and the environment. *See, e.g., id.* § 7401(b)(1). In this case, if the Administrator

were to take the required action, the statute would require EPA, first, to submit the proposed

revised standards or determination for public comment, then to respond to public comments

received, and to fulfill all other rulemaking requirements that would apply. *See id.* §§

7411(b)(1)(B), 7607(d). The Administrator's failure to act has denied EDF and its members

their right to notice and comment. The Clean Air Act also requires the Administrator to satisfy

substantive standards included in CAA section 111(b)(1)(B), such as to consider and address

BDT now available and to consider and address the emission limitations and percent reductions

of emissions achieved in practice by MSW landfills since 1996. The failure to act has deprived

EDF and its members of the protection the Act provides by requiring EPA to go through the

rulemaking process to issue a determination that EPA believes meets this substantive standard.

Furthermore, the Administrator's failure to take action as required by CAA section 111(b)(1)(B)

for MSW landfills also injures EDF's members by depriving them of the right to seek judicial

review of the lawfulness of any such revision, determination, or related final action based in part

on these substantive requirements for EPA action and on technology changes that have occurred

since the promulgation of the initial standards. *Id.* § 7607(b): In sum, the failure to take each

overdue, legally required action under CAA section 111 denies EDF and its members both the

substantive protections from the harm of MSW landfills that the Clean Air Act guarantees, and

also the procedural protections the Act includes that are designed to protect their health,

13

environmental, recreational, and aesthetic interests.  The Administrator's ongoing failure to carry

out these requirements injures EDF and its members by harming or causing a substantial

probability of harm to their protected interests.

    44.    For all of the foregoing reasons, in connection with the allegations in all

paragraphs of this complaint, above and below, the failures complained of herein cause EDF and

its members injuries for which they have no adequate remedy at law.  Granting the requested

relief would redress these injuries.

## CLAIM FOR RELIEF

### Violation of Section 111(b)(1)(B) of the Clean Air Act:
### Continuing Failure to Perform Nondiscretionary Act or Duty

    45.    The allegations of all foregoing paragraphs are hereby incorporated as if set forth

fully herein.

    46.    The Administrator's failure either to review the NSPS for new, modified, and

reconstructed sources within the MSW landfills source category, promulgated at 61 Fed. Reg.

9905 (Mar. 12, 1996) (codified at 40 C.F.R. Part 60, Subpart WWW), or to "determine[] that

such review is not appropriate in light of readily available information on the efficacy of such

standard," in accordance with 42 U.S.C. § 7411(b)(1)(B), constitutes the failure to perform an act

or duty that is not discretionary with the Administrator within the meaning of section 304(a)(2)

of the Clean Air Act, 42 U.S.C. § 7604(a)(2).

    47.    The Administrator's failure either to revise the NSPS for new, modified, and

reconstructed sources within the MSW landfills source category, promulgated at 61 Fed. Reg.

9905 (Mar. 12, 1996) (codified at 40 C.F.R. Part 60, Subpart WWW), or to issue a determination

that such a revision is not "appropriate," in accordance with 42 U.S.C. § 7411(b)(1)(B),

14

constitutes the failure to perform an act or duty that is not discretionary with the Administrator within the meaning of section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2).

48.     Due to the ongoing failures to take the above-described legal duties, as required by section 111(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(B), the Administrator has violated section 111 of the Clean Air Act each day since March 12, 2004, and continues to do so as of the present time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Declare that the EPA Administrator's failure either to review or determine not to review the MSW Landfills NSPS, and the Administrator's failure either to revise or determine not to revise the MSW Landfills NSPS as required by Clean Air Act section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), constitutes the failure of the Administrator to perform an act or duty that is not discretionary within the meaning of 42 U.S.C. § 7604(a)(2);

(2) Order the EPA Administrator to satisfy her CAA section 111 duties in regard to MSW landfills, including either to review the MSW Landfills NSPS or issue a final determination that such a review is not appropriate in light of readily available information on the efficacy of the standard and either to revise the MSW Landfills NSPS or issue a final determination that such a revision is not appropriate, in accordance with 42 U.S.C. § 7411(b)(1)(B), pursuant to an expeditious deadline established by this Court;

(3) Retain jurisdiction to ensure compliance with the Court's decree;

(4) Award Plaintiff the costs of this action, including attorneys' fees; and,

(5) Grant such other relief as the Court deems just and proper.

DATED:   June 30, 2011

Respectfully Submitted,

Seth L. Johnson (SJ 2123)
EARTHJUSTICE
1625 Massachusetts Avenue, N.W. Suite 702
Washington, D.C. 20036
Tel: (202) 667-4500
Fax: (202) 667-2356
sjohnson@earthjustice.org

Deborah Goldberg (DG 9285)
EARTHJUSTICE
156 William Street, Suite 800
New York, NY 10038
Tel: (212) 791-1881
Fax: (212) 918-1556
dgoldberg@earthjustice.org

*Counsel for Plaintiff Environmental Defense Fund*